IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| Ronnie Rainey, | ) | |
| | ) | Cv. No.    3:13-cv-0612 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | District Judge Campbell |
| Sun Life Assurance Co. of Canada, | ) | Magistrate Judge Brown |
| CHS/Community Health Systems, Inc. | ) | |
| Welfare Benefit Plan, and CHS/Community | ) | |
| Health Systems, Inc. | ) | |
| | ) | |
| Defendants, | ) | |

## REPORT AND RECOMMENDATION

Presently pending before the Magistrate Judge are defendants' Sun Life Assurance Co. of Canada (Sun Life) and CHS/Community Health Systems, Inc. Welfare Benefit Plan and CHS/Community Health Systems, Inc. (collectively "CHS") motions for judgment on the administrative record (Docket Entries ("Docs.") 26, 29), and Mr. Ronnie Rainey's[1] ("Plaintiff") motion for summary judgment.[2]  (Doc. 43)  For the reasons stated below, the Magistrate Judge recommends that Plaintiff's claims under Count I of the complaint be **DISMISSED**; CHS' motion for Judgment on the Administrative Record be **DENIED** as to Count II, Sun Life's motion for Judgment on the Administrative Record be **GRANTED** as to Count II, and Plaintiff's motion for Summary Judgment be **GRANTED** as to CHS but **DENIED** as to Sun Life.

## BACKGROUND

Amy Rainey applied for a part-time position at Abilene Regional Medical Center ("Abilene Regional") on January 28, 2010 and was offered a "Part-time non-exempt position" as

---

1    Mr. Rainey is the executor of Ms. Amy Rainey, the deceased insured, and next friend to her two children.

2    Plaintiff moved for discovery outside of the administrative record in regard to both CHS' and Sun Life's administrative duties.  (Plaintiff's Motion to Compel Depositions, Doc. 24, pp. 11-12)  However, through the development of the record now before the Court, many of Plaintiff's proposed topics for discovery have been developed to the extent the Magistrate Judge can make a dispositive recommendation upon the parties' motions.  As such, Plaintiff's motion for additional discovery should be dismissed as moot.

a pharmacist there on March 29, 2010. (Plaintiff's Response to CHS' Statement of Material Fact ("Facts"), Doc. 68, p. 1 ¶ 1) [3] As part of its offer, Abilene Regional informed Ms. Rainey that it "is affiliated with CHS/Community Health Systems, Inc. and offers CHS's benefits package ("the Plan") to [its] full-time employees who work more than 32 hours per week." (Facts, Doc. 68, p. 2 ¶ 5; Administrative Record ("AR"), Doc. 39, pp. SUN0421) At issue here are the life and accidental death and dismemberment ("AD&D") insurance benefits that Ms. Rainey attempted to elect under the Plan. (Facts, Doc. 68, p. 7 ¶ 28) CHS' insurance benefits are funded through and governed by a Group Life Policy issued by Sun Life ("the Policy"). (Facts. Doc. 68, p. 3 ¶ 10)

On April 6, 2010, Ms. Dorothy Drones, Abilene Regional's benefits coordinator, met with Ms. Rainey for orientation. (Sun Life's Motion for Judgment on the Administrative Record ("SL M. for Judgment on AR"), Doc 26-2, pp. 1-2) Ms. Rainey was informed that she would make all benefit elections through CHS' benefits web portal and was provided with "an enrollment guide entitled 'Your Flexible Benefits Enrollment Guide 2010'" ("enrollment guide"). (Facts, Doc. 68, pp. 6, 7 ¶¶ 21, 28) At the conclusion of orientation, both Ms. Rainey and Ms. Drones signed an acknowledgment that certain "benefits had been discussed with" Ms. Rainey, and Ms. Rainey signed the Medical Center's offer letter. (AR, Doc. 38, p. SUN0421; Exh. A to S L Motion for Judgment on the AR ("SL M. for Judgment on AR"), Doc. 26-2, p. 2) Despite CHS' and Ms. Drones' practice of providing new employees with summary plan descriptions ("SPD") of CHS insurance benefits, the confirmation statement does not reflect that Ms. Rainey was provided with an SPD and Ms. Drones does not recall furnishing one to Ms. Rainey at that time. (Declaration of Dorothy Drones, Doc. 57-2, p. 2 ¶ 4)

---

3    The Magistrate Judge relies on the agreed upon statement of facts where possible.

The acknowledgment letter signed by Ms. Rainey states that "[a]s a full-time or part-time employee working at least 20 hours/week, [Ms. Rainey is] eligible for insurance coverage." (SL M. for Judgment on AR, Doc 26-2, p. 2) The one page enrollment guide provides that "[a]ll benefits eligible employees working at least 32 hours per week are provided with company paid life insurance and accidental death and dismemberment (AD&D) coverage." (AR, Doc. 39, p. SUN013) Directly below that, the guide states "in addition, all benefits eligible employees can elect to purchase supplemental coverage." (AR, Doc. 39, p. SUN013) "Employees working 32+ hours per week may elect to purchase supplemental coverage in amounts from 1x to 4x" their yearly salary, but the total combined coverage between basic life and supplemental AD&D is $1,500,000.00. (AR, Doc. 39, p. SUN013) Further, "employees working 20 to 31 hours per week they may elect to purchase supplemental insurance coverage in increments of $15,000" up to a maximum of $75,000. (AR., Doc. 39, p. SUN013)

Near the time of Ms. Rainey's hiring, "Ms. Drones' office completed a personnel action form ("PAF") to process Ms. Rainey's hiring." (Facts, Doc. 68, p. 7 ¶ 29) The form used by Ms. Drones' office contains boxes in which an 'X' is to be placed to indicate Ms. Rainey's status as a full-time ("FT") or a part-time ("PT") employee. (AR, Doc. 39, p. SUN0404) Ms. Rainey's status is indicated by two "X's" located between the two boxes. (AR, Doc. 39, p. SUN0404) Ms. Rainey's PAF was forwarded to Abilene Regional's payroll office where Ms. Rainey was erroneously classified as a full-time employee. (Facts, Doc. 68, pp. 8-9 ¶¶ 30-33) Due to Ms. Rainey's classification as a full-time employee, she was given a Class 4 status ("All other FT") for benefits purposes.[4] Under the terms of Sun Life's policy, the amount of insurance benefits available to employees governed by the Plan is determined by their job classification. (AR, Doc.

---

[4] A Class 4 employee: "All Other Full-Time Corporate Employees, All QHR Non-Exempt Employees, All Other Full-Time Hospital Employees and All Grandfathered Employees of Galesburg." (AR, Doc. 38, p. SUN088)

38, pp. SUN088-91)

Employee job classifications are not reflected in the enrollment guide given to Ms. Rainey. Rather, they are indicated in the schedule of benefits included with the policy which defines 11 different classifications of employee such as corporate officers, corporate employees, and other full and part time employees of the various medical facilities covered by the Plan. (AR, Doc. 38, pp. SUN088-91) Because Ms. Rainey was considered a Class 4 employee, she was automatically enrolled in $117,000.00 of basic life insurance coverage, which equates to nearly twice her annual hourly wages as a part-time employee. (Facts, Doc. 68, pp. 9-10 ¶¶ 38-39) The payroll office then forwarded Ms. Rainey's information to Hewitt Associates, CHS' web based benefits enrollment system management firm, in advance of Ms. Rainey's enrollment in benefits. (Facts, Doc. 68, p. 8-9 ¶ 34, 36) During her enrollment session, the benefits portal indicated that Ms. Rainey's class was "all other FT," her automatic enrollment in company provided life insurance was reflected, and she "saw benefit options only earned by and offered to full-time employees." (Facts, Doc. 68, pp. 9-10 ¶¶ 38-39; Declaration of Bernie McDearman, Doc. 57-1, pp. 4-5 ¶ 8)

Accordingly, Ms. Rainey was allowed to elect 1x her annual salary ($117,000.00) in company paid life insurance and 3x her annual salary ($350,000.00) in supplemental life and AD&D insurance. (AR, Doc. 39, p. SUN09; Facts, Doc. 68, p. 9 ¶ 36, 38) Both elections included a double indemnity provision which doubled the amount of insurance benefits to $934,000.00 in the event of accidental death. (Complaint at p. 2-3 ¶¶ 17-19) Ms. Rainey received confirmation of her enrollment in the plan at the values she elected to purchase. (AR, Doc. 39, p. SUN09-10) Thereafter, CHS paid its portion of the premium for Ms. Rainey's basic life insurance, deducted the premiums for supplemental life insurance from Ms. Rainey's

paychecks, and submitted both premium payments to Sun Life for the duration of her employment. (Facts, Doc. 68, p. 10-11 ¶ 43, 44) The record reflects that a second confirmation statement was printed on December 2, 2010 at or near renewal, reflecting that Ms. Rainey's benefits would remain unaltered. (AR, Doc. 39, p. SUN03) Ms. Rainey's 2011 confirmation statement also states that "CHS audits its benefits plans, including information provided by employees and their dependents in connection with the enrollment process. (AR, Doc. 39, p. SUN03)

On the morning of December 20, 2010, Ms. Rainey was tragically shot and killed by her estranged husband. (AR, Doc. 38, p. SUN0236) Under the terms of Sun Life's policy, Ms. Rainey's death was considered accidental and she was entitled to enhanced benefits. However, rather than the $934,000.00 in coverage that she elected, Sun Life determined that Ms. Rainey was eligible for a maximum benefit of $150,000.00 due to her part-time status. (AR, Doc. 38, p. SUN063-68) According to Sun Life, "[u]nder the Plan and under the Sun Life policy, staff pharmacists scheduled to work fewer than 32 hours per week at Abilene Regional are not eligible for Basic Life and Basic AD&D benefits." (Facts, Doc. 68, p. 4 ¶ 15) Thus, "[a]s a part-time staff pharmacist scheduled to work fewer than 32 hours per week at Abilene Regional, Ms. Raney was not eligible for Basic Life and Basic AD&D coverage." (Facts, Doc. 68, p. 5 ¶ 16) Sun Life affirmed its initial decision to deny Plaintiff's claim on July 18, 2012. (AR, Doc. 38, p. SUN063-68)

Plaintiff brought the instant claims on June 21, 2013 alleging that Sun Life had wrongfully denied benefits to Ms. Rainey and that CHS and Sun Life had breached their fiduciary duties to Ms. Rainey. (Doc. 1) At the close of discovery, Sun Life moved the court for judgment on the administrative record and permission to file the administrative record on April

9, 2014.  (Doc. 26, 27)  On that same day, the District Court referred the instant matter to the Magistrate Judge for report and recommendation.  (Doc. 28)  CHS moved the court for judgment on the administrative record on April 11, 2014 (Doc. 29), and Sun Life entered the administrative record on April 23, 2014.  (Doc. 38)  On May 12, 2014, Plaintiff filed responses to Sun Life and CHS' motions for judgment on the record, moved for summary judgment, and filed a statement of undisputed material facts in support of his motion.  (Doc. 43, 44, 46, 47, 48)  Both Sun Life and CHS filed responses to Plaintiff's motion for summary judgment and statements of material facts on June 9, 2014.  (Doc. 52-55)  Contemporaneously, CHS filed its own statement of material facts.  (Doc. 56)  On June 26, 2014, Plaintiff filed reply to defendants' responses and to CHS' statement of material fact.  (Doc. 66-68)

This matter is properly before the Court.

## STANDARD OF REVIEW

Despite initially alleging that Plaintiff was wrongfully denied benefits under the Plan (Complaint, Doc. 1, p. 6 ¶ 45), Plaintiff now concedes that "Ms. Rainey was not eligible for" the benefits she elected.  (Facts, Doc. 68, p. 5 ¶ 16)  Rather, "Plaintiff only brings a claim under [ERISA] § 502(a)(1)(B) at all" to provide a vehicle for his equitable remedy should he prevail on his § 502(a)(3) claims.  (Plaintiff's Memorandum in Support of Summary Judgment ("P. M. for Summary Judgment"), Doc. 45, p. 8)  In pursuit of equitable remedies for breach of fiduciary duty, Plaintiff relies upon *Weaver v. Prudential Ins. Co. of Am.*, 2011 U.S. Dist. LEXIS 118152 (M.D. Tenn. Oct. 11, 2011) for the proposition that *de novo* review of the defendants' conduct here is appropriate.  According to Plaintiff, Sun Life is not entitled to deference because he has invoked ERISA's equitable remedies provision.  As Sun Life correctly argues, however,

proceeding under § 502(a)(3) does not subject a plan fiduciary's conduct to more exacting scrutiny in all cases.

The *Weaver* plaintiff's claims arose out of incorrect and misleading advice given by the employer/plan administrator regarding life insurance benefits where "all fiduciary responsibilities with respect to life insurance benefit claim administration *including interpretive and factual determinations*" were delegated to the insurance company. *Id.* at *11 Thus, according to the *Weaver* court, the plan administrator was acting outside of its grant of fiduciary duty when it misrepresented the plan to Weaver, making *de novo* review appropriate. While the court based its reasoning on the fact that the issue "was never considered in the course of determining the plaintiff's eligibility for benefits" under § 502(a)(1)(B), that is not the relevant inquiry as *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702 (6th Cir. 2000) makes clear.

In *Hunter*, the lower court "held that the arbitrary and capricious standard of review applies" to a fiduciary's interpretation of plan terms. *Hunter*, 220 F.3d at 710. In upholding the lower court's decision, the court dismissed plaintiff's argument "that the arbitrary and capricious standard is [only] appropriate in cases involving benefit determinations" (those under § 502(a)(1)(B)). *Id.* In doing so, the court noted that the more deferential standard had been applied to similar claims "outside of the benefits denial context," *Hunter*, 220 F.3d at 712, such as *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 140 (6th Cir. 1993) where the court afforded deferential review to a plan administrator's decision of "whether or not to distribute lump sum payments upon early retirement" under the terms of that plan. Thus, deference is due where a fiduciary is acting in its official capacity to interpret plan terms. *See Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (noting that "a trustee's *decisions* in carrying out his duties as defined by a trust agreement are accorded deferential treatment.").

Despite Plaintiff's concession "that there has been no breach of fiduciary duties or other kind of error with respect to the interpretation of the Plan itself," Plaintiff is clearly challenging Sun Life's duty related to the interpretation of plan documents. Plaintiff asserts that Sun Life "has the power to determine the existence of coverage [as well as] the power also to decide when to make such a determination." (P. M. for Summary Judgment, Doc. 45, p. 12) The decision to postpone its eligibility inquiry until a claim is filed, according to Plaintiff, is a choice by Sun Life, clearly within its discretionary authority. (P. M. for Summary Judgment, Doc. 45, p. 12) Thus, if Sun Life's "interpretation of the Plan's provisions is 'reasonable,' it must be upheld." *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 302 (6th Cir. 2006)

Because Plaintiff concedes his claims to benefits under § 502(a)(1)(B) and all remaining issues pertain to actions or conduct outside of the context of the administrative record, the appropriate standard to be applied to Plaintiff's § 502(a)(3) claim is summary judgment. *See Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793 (6th Cir. 2012) (affirming lower court's award of summary judgment under ERISA 502(a)(2) for breach of fiduciary duty), *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 839 (6 th Cir. 2007) (affirming lower court's grant of summary judgment on plaintiff's ERISA 502(a)(3) claims). Summary judgment is appropriate where no issues of material fact remain and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). "When faced with a motion for summary judgment, the non-moving party must present more than a mere-scintilla of evidence" to survive. *Hunter*, 220 F.3d at 709 (relying on *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In its consideration, the court must "construe the evidence and draw all inferences in a light most favorable to the non-moving party." *Id.*

<u>**ANALYSIS & DISCUSSION**</u>

Plaintiff concedes his claims under Count I of the complaint. However, Plaintiff also alleges separate and distinct claims for breach of fiduciary duty against CHS and Sun Life under ERISA § 502(a)(3). (Complaint, Doc. 1. pp. 7-9) Specifically, Plaintiff alleges that both CHS and Sun Life breached their fiduciary duties to Ms. Rainey by furnishing her with incomplete information regarding benefits eligibility, materially misleading Ms. Rainey regarding her eligibility, and withholding insurance premiums for insurance she was ineligible for. (P. M. for Summary Judgment, Doc. 45, pp. 13-18) CHS asserts in response that Plaintiff's § 502(a)(3) claims are repackaged 502(a)(1)(B) claims, that CHS satisfied its fiduciary duties to Ms. Rainey and did not mislead her, and that Plaintiff cannot show that Ms. Rainey relied to her detriment on any alleged misrepresentations or that Ms. Rainey was not actually harmed by those misrepresentations. (CHS Memorandum in Support of Judgment on the Administrative Record ("CHS M. for Judgment on AR"), Doc. 30, pp. 8-17) Sun Life also asserts that Plaintiff's § 502(a)(3) claims are repackaged § 501(a)(1)(B) claims. Sun Life further argues that it owed no fiduciary duty to Ms. Rainey to determine her eligibility for benefits prior to claims administration, that Plaintiff cannot show actual harm, and any remedy provided under § 502(a)(3) would be monetary damages rather than equitable relief. (SL M. for Judgment on AR, Doc. 26-1, pp. 16-25; SL Resp. to Summary Judgment, Doc. 52, pp. 24-26)

**I.    Plaintiff's claims under § 502(a)(3) are not repackaged § 502(a)(1)(B) claims**

CHS asserts that Plaintiff "seeks the additional Plan benefits he has admitted he is not entitled to," and, thus, his § 502(a)(3) claim is foreclosed. (CHS M. for Judgment on AR, Doc. 30, p. 11) Sun Life argues that ERISA § 502(a)(1)(B) is Plaintiff's exclusive remedy under the circumstances here, and, thus, Plaintiff's claim is nothing more than a second bite at the apple.

(SL Resp. to Summary Judgment, Doc. 52, p. 22)  Plaintiff responds that "it is often difficult to distinguish between claims under § 502(a)(1)(B) and § 502(a)(3) on the basis of the relief sought."  (P. M. for Summary Judgment, Doc. 45, p. 8)  According to Plaintiff, the distinction between the two is the violation alleged rather than the relief sought.

Contrary to Plaintiff's assertion, the distinction is not the violation alleged, but, rather, whether the party may proceed under any of § 502's other provisions, and, by doing so, attain a complete remedy.  *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007) (noting that where "§ [502] (a)(1)(B) provide[s] a remedy for [a beneficiary's] alleged injury and allowe[s] him to bring a lawsuit to challenge the Plan Administrator's denial of benefits," he may not proceed under § 502(a)(3)).  While "there is a remedy for a breach of fiduciary duty related to the interpretation of plan documents and payment of claims under ERISA § 502(a)(1)(B) [and] a remedy for 'other breaches of other sorts of fiduciary obligation[s]" under § 502(a)(3), the Supreme Court held in *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) that the district court lacks authority under § 502(a)(1)(B) to fashion equitable relief.  A party may proceed under § 502(a)(3) where "relief that, traditionally speaking w[as] typically available in equity'" forms the appropriate relief, either in whole or in part, for the injury alleged.  *Id.*, *see Hill v. Blue Cross Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005) (permitting claims under § 502(a)(3) to proceed in concert with claims under § 502(a)(1)(B) where "[o]nly injunctive relief" will provide a complete remedy.").

Here, Plaintiff's claim against CHS is "separate and distinct" from a § 502(a)(1)(B) claim because CHS played no part in the determination of Plaintiff's benefits claim.  *Gore*, 477 F.3d at 839, 842 (noting that the plan administrator "cannot be sued under [§ 502(a)(1)(B)] [where a claims administrator is] solely responsible for the denial of benefits.").  Similarly, the injury

alleged by Plaintiff in regard to Sun Life is not for wrongfully denied benefits under the Plan, but, rather that Sun Life retained premium monies that it had no right to. Because Plaintiff concedes that he is not entitled to benefits for Sun Life's alleged breach of duty and is not contesting Sun Life's denial of benefits, Plaintiff has no remedy under § 502(a)(1)(B). Thus, § 502(a)(3) provides the only vehicle through which he can bring claims against both CHS and Sun Life and attain a complete remedy. Plaintiff's claims under § 502(a)(3) are not repackaged § 502(a)(1)(B) claims.

## II. Plaintiff's substantive claims as to CHS

### A. CHS breached its fiduciary duty to Ms. Rainey

CHS asserts that it fulfilled its fiduciary duties as Plan Administrator to Ms. Rainey and that any alleged misrepresentations were not materially misleading. As CHS' argument goes, the confirmation statements showing Ms. Rainey's benefit elections and pay stubs are not misrepresentations of Ms. Rainey's eligibility for benefits but "are all automatically produced documents or screen shots that reflect Ms. Rainey's being allowed the opportunity to use" CHS' benefits web portal. (CHS Resp. to Summary Judgment, Doc. 53, p. 11) Further, all of these documents stem from a "clerical error" in Abilene Regional's payroll department which erroneously classified Ms. Rainey as a full time employee. (CHS Resp. to Summary Judgment, Doc. 53, pp. 11-24)

In response, Plaintiff presses his argument that CHS' representations materially misled Ms. Rainey in regard to her benefit eligibility. (Plaintiff's Response to CHS' Motion for Judgment on the Administrative Record ("P. Resp. to CHS' M. for Judgment on AR"), Doc. 46, p. 4) When Ms. Rainey "was given the option by the Benefits Enrollment Website to enroll in supplemental life and accidental death insurance," CHS represented to Ms. Rainey that she was

eligible for $117,000 in basic life insurance benefits and $350,000 in supplemental death benefits. (P. M. for Summary Judgment, Doc. 45, p. 13) Further, "[b]y repeatedly communicating to Ms. Rainey that she was eligible for and enrolled in [the benefits she elected], when in fact she was not eligible for such coverage under the terms of the plan, CHS breached its fiduciary duty not to mis-inform [*sic*]." (P. M. for Summary Judgment, Doc. 45, pp. 14-15)

Initially, the Magistrate Judge finds that the confirmation statements and the pay stubs are not representations of Ms. Rainey's eligibility for benefits as Plaintiff claims. Rather, the confirmation statements simply reflect benefit elections that Ms. Rainey made through her own discretion, and the pay stubs reflect payments made to Sun Life for the elections she made. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991) (noting that "processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits, [are] not a fiduciary [functions] under ERISA."). However, CHS never squarely addresses the issue of the representations made to Ms. Rainey through its benefits web portal other than to allege a "clerical error does not equal breach of fiduciary duty" absent willful misconduct or knowledge on the part of the plan administrator that an error has occurred. (CHS Resp. to P. M. for Summary Judgment, Doc. 53, pp. 15-16)

Contrary to CHS' argument, however, neither willful misconduct nor knowledge on the part of the plan administrator is required in the context of misrepresented benefits. Rather, "[a] fiduciary breaches [its] duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006) (quoting *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)). Thus, the relevant questions are: "(1) [whether CHS] was acting in a fiduciary capacity when it made the

challenged representations; (2) [whether the representations] constituted material misrepresentations; and (3) [whether Ms. Rainey] relied on those representations to [her] detriment." *Id.*

### (1) Representations to plan participants through the web portal are fiduciary acts attributable to CHS

ERISA provides that a person or entity is a "fiduciary with respect to a plan to the extent (i) [it] exercises any discretionary authority or discretionary control respecting management of such plan . . . [or] (iii) [it] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The governing plan document—CHS/Community Health Systems, Inc. Welfare Benefit Plan ("Master Plan")—provides that "[t]he Employer shall be the plan administrator of the Plan . . . [and] may specifically designate one or more officers or employees . . . to carry out the fiduciary responsibilities of the Employer under the Plan." (Master Plan, Doc. 57-1, p. 16 ¶ 4.01) The Employer is defined as "CHS/Community Health Systems, Inc. together with all other Affiliated Companies of CHS/Community Health Systems, Inc." (Master Plan, Doc. 57-1, p. 13 ¶ 2.06) CHS, as plan administrator, determined to implement a benefits web portal as the means by which its employees enroll in benefits and then to *require* employees to enroll thorough this tool. Any misrepresentation of benefits to an enrollee through the web portal thus subjects CHS to fiduciary liability whether that misrepresentation is made "negligently or intentionally." *See Krohn*, 173 F.3d at 547.

### (2) The representations made to Ms. Rainey were materially misleading

Under ERISA, materially misleading communications regarding eligibility to or extent of benefits constitute a breach of fiduciary duty. *See Moore*, 458 F.3d at 432 (quoting *Drennan v. Gen Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)). Whether a communication was

materially misleading is a mixed question of law and fact that is appropriate for summary judgment. *Id.* at 433 (quoting *James*, 305 F.3d at 449)  Materiality is gauged by the "likelihood that it would mislead a reasonable employee in making an adequately informed decision [regarding] benefits to which she may be entitled." *Krohn*, 173 F.3d at 544.

Relying on *Haviland v. Metro Life Ins. Co.*, 730 F.3d 563 (6th Cir. 2013), CHS asserts that a plan administrator's fiduciary duty is only implicated where a communication occurs in response to a participant's request, where a plan provider offers material misrepresentations regarding the future of a plan on its own volition, or where ERISA requires the sponsor to "forecast the future." *Id.* at 572.  However, when CHS' benefits web portal represented to Ms. Rainey what benefits were available to her, CHS was clearly representing the future of its plan on its own accord—the plan would provide the benefits to Ms. Rainey that she enrolled in.

Further, as Plaintiff asserts, the contours of the Sixth Circuit's jurisprudence on benefit misrepresentation is founded on the recognition that "the 'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" *Krohn*, 173 F.3d at 548.  Silence in the face of a participant's initial enrollment might indeed be harmful where the participant lacks sufficient information to make valid elections. *See* 29 U.S.C. § 1024(b)(1)(A) (requiring that each participant be furnished with a summary plan description within 90 days of eligibility).

CHS asserts that Ms. Rainey knew that she was a part time employee and should have recognized that the web portal incorrectly showed her classification as "ALL other FT" and designated her salary as $117,000. (CHS Resp. to Summary Judgment, Doc. 53, pp. 19, 22) Thus, she should have known she was not eligible for the benefits she was given the opportunity

to enroll in. This is true particularly where the benefits enrollment guide in concert with the SPD clearly limit basic life and basic AD&D insurance coverage to "[a]ll benefits eligible employees working at least 32 hours per week," and supplemental life insurance to "employees 'working 32+ hours per week." (CHS Resp. to Summary Judgment, Doc. 53, p. 17) The record, however, demonstrates that, in a light most favorable to Plaintiff, Ms. Rainey was only in possession of the benefits guide at the time of her enrollment.

CHS asserts rather equivocally that it was their procedure to "provide[] employees like Ms. Rainey the SPD that accurately summarized the terms of the Plan." (CHS M. for Judgment on the AR, Doc. 30, p. 13) As noted *supra* at p. 2, however, the confirmation statement signed at Ms. Rainey's orientation fails to indicate that Ms. Rainey was provided with any written documentation, much less an SPD, and "Ms. Drones . . . has no recollection of having" provided an SPD to Ms. Rainey. (Facts, Doc. 68, pp. 6-7 ¶ 24; Exh. A to SL M. for Judgment on AR, Doc. 26-2, p. 2) The parties can only agree that the information possessed by Ms. Rainey at the time of her enrollment was the enrollment guide, which does not define which employees fall within the designation of "ALL other FT," any of the other ten classifications of employees included in the schedule of benefits, or how an employee's salary is calculated for plan purposes. Thus, those indications by CHS' web portal could not have informed Ms. Rainey that she was not entitled to the benefit choices provided to her.

Moreover, as noted *supra* at p. 3, while the guide does inform the reader that employees working 32 hours per week are provided with life and accidental death benefits and "may elect" supplemental AD&D insurance in amounts of 1 to 4 times their annual salary and also states that those working fewer than 32 hours "may elect to purchase" supplemental insurance in $15,000 increments up to $75,000, it does not state definitively that employees working fewer than 32

hours per week are excluded from life and AD&D insurance at the higher values. Indeed, under the terms of the plan, some part-time employees working 20 hours per week are eligible to receive these benefits. (AR, Doc. 39, pp. SUN085, 0142) Further, the guide clearly links the availability of AD&D insurance in values from 1 to 4 times an employee's annual salary to company paid life insurance. Even in a light most favorable to CHS, there is a substantial likelihood that any reasonable employee would be unable to make an informed decision regarding those benefits under the circumstances here. CHS' benefits web portal showed that Ms. Rainey was already enrolled in company paid life and AD&D insurance. The benefit web portal further presented Ms. Rainey with only supplemental AD&D options available to full-time employees, and she lacked any indication that those benefits were not available to her.

### (3) Ms. Rainey relied on CHS' representations to her detriment

In his complaint, Plaintiff alleges that Ms. Rainey did not acquire additional life insurance in reliance on the defendants' alleged misrepresentation that she was eligible to enroll in the coverage she elected under the Plan. (Complaint, Doc. 1, p. 8 ¶ 64) CHS asserts that "there is no evidentiary basis for [Plaintiff's claim] in the Administrative Record." (CHS M. for Judgment on AR, Doc. 30, p. 16) Similarly, however, there is no evidence in the record that Ms. Rainey did not elect to forego additional insurance as a result of her election in benefits under the Plan. What is clear from the record is that Ms. Rainey desired insurance benefits,[5] enrolled in insurance benefits under the Plan, paid for those benefits for the duration of her employment, and did not purchase additional coverage from another source.

In a light most favorable to Plaintiff, it is reasonable to presume that Ms. Rainey's decision not to pursue additional insurance coverage was, at least in part, due to her reasonable

---

5    Ms. Rainey's employment file reflects that one of the primary reasons she sought employment as a staff pharmacist at Abilene Regional was the availability of benefits. (CHS Supplement, Doc. 59-2, p. 62)

belief that she was enrolled in the Plan at the amounts she elected through CHS' web benefits portal. *See Bloemker v. Laborer's Local 265 Pension Fund*, 605 F.3d 436, 443 (6 th Cir. 2010) (finding that an individual's claims "that he relied upon these misrepresentations when deciding to retire . . . sufficient to satisfy the [detrimental reliance prong] of estoppel."). Notwithstanding a lack of evidence regarding Ms. Rainey's thought process in deciding not to purchase additional insurance, it is abundantly clear that Ms. Rainey elected to forego a portion of her monthly income, to her detriment, based upon her belief that she was eligible for the benefits represented to her by CHS.

### III. Plaintiff's claims as to Sun Life

#### A. Sun Life was not under a duty to perform an eligibility review outside of the claims process and any imposition of such a duty would defeat ERISA's core intent.

Plaintiff relies on *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012) for his assertion that Sun Life failed to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries" by delaying its eligibility determination of Ms. Rainey until Plaintiff filed his claim to benefits. *See* 29 U.S.C. § 1104(a). According to Plaintiff, acceptance and retention of premium payments regarding Ms. Rainey's life and AD&D insurance "while having no idea whether coverage existed" is inconsistent with the fiduciary duties imposed by ERISA. (P. M. for Summary Judgment, Doc. 45, p. 16) Without the duty to determine eligibility at enrollment, insurers such as Sun Life have "every incentive to wrongfully accept premiums . . . [leading to] essentially risk free windfall profits from employees who paid premiums on non-existent benefits." (P. M. for Summary Judgment, Doc. 45, p. 17) (quoting *McCravy*, 690 F.3d at 183). This is particularly so where Sun Life requires that CHS furnish information to it relative to participants' eligibility and changing coverage and requires CHS to open its records at reasonable times.

Plaintiff's reliance on *McCravy* is misplaced, however. First and foremost, *McCravy* did not hold that acceptance of premiums without verification of eligibility is a breach of fiduciary duty. Rather, *McCravy* expounded upon the equitable remedies available to a plaintiff under § 502(a)(3) in the wake of *Amara* and then remanded for a determination of "whether McCravy's breach of fiduciary duty claim will ultimately succeed." *Id.* at 182. More importantly, unlike in the case at bar, MetLife was both the claims administrator as well as the plan administrator which expanded its duties well beyond the contours of Sun Life's duties here. *Id.* at 177. ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1102 (21)(A). However, "fiduciary status is not an all or nothing concept," the relevant question is whether an entity "is a fiduciary with respect to the particular activity in question." *Guyan*, 689 F.3d at 797 (internal quotations and citations omitted). As this precedent implies, the contours of a fiduciary's duty is defined by its authority under the Plan.

CHS is the plan administrator and bears responsibility for the vast majority of the administrative duties, and costs associated with those duties, for the insurance coverage up to and including filing the initial claim for benefits. (SL Resp. to Summary Judgment, Doc. 52, pp. 5-6) Sun Life "acted as a fiduciary [under the terms of the Plan] (that is, was performing a fiduciary function) [only] when" adjudicating claims or managing and disposing of Plan assets. *Deluca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 746 (6th Cir. 2010) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Ms. Rainey's eligibility is only relevant to Sun Life while adjudicating her claim and it was reasonable to postpone that determination until that time. Nothing in ERISA or the Plan dictates otherwise. Further, as Sun Life argues, it is also

reasonable to postpone an eligibility determination until claim submission, in the context of group life insurance, given the efficiencies and cost savings to participants in doing so.

As Sun Life posits, "Congress sought 'to create a system that is not so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Varity Corp.*, 516 U.S. at 497). ERISA's comprehensive remedial scheme represents "a 'careful *balancing*' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* at 517 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004)). Indeed, ERISA specifically places a duty of prudence upon plan fiduciaries to concurrently act "for the exclusive purpose of providing benefits to participants and beneficiaries [while] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)-(ii).

Sun Life argues that the cost of life insurance to CHS' employees would rise in proportion to the increase in administrative costs imposed upon it by performing an eligibility determination on all of CHS' 135000 employees at enrollment rather than when or if a claim is filed. (SL Resp. to Summary Judgment, Doc. 52, p. 17) Plaintiff does not contest the realities of Sun Life's argument, or Sun Life's contention that the costs of insurance coverage to all of CHS' employees would rise. Rather, Plaintiff argues that the equities in his case warrant imposition of a duty to perform an eligibility determination at enrollment rather than at claim submission. ERISA is not singularly focused upon individual participants or beneficiaries in its core aims, however. Focus of a plan fiduciary does not pivot to the interest of a singular participant except in the context of a benefit determination. Congress' intent is that all plan participants benefit from the economies associated with efficient and cost effective plan administration. In

Plaintiff's case, Ms. Rainey was permitted, albeit incorrectly, to enroll in $934,000.00 worth of life and AD&D insurance for $12.76 per pay period. Sun Life's decision not to perform an eligibility determination except when or if a claim is filed is reasonable in light of these economies.

**B. Plaintiff's actual harm and equitable relief vs. monetary damages**

Plaintiff's theory of recovery has changed from reformation of the plan to permit recovery of the full amount of the life and AD&D insurance benefits Ms. Rainey enrolled in (Complaint, Doc. 1, p. 10) to surcharge. (P. M. for Summary Judgment, Doc. 45, p. 7) Under either theory, Sun Life argues that Plaintiff has not demonstrated actual harm and relief here amounts to monetary damages. However, it is within the sound discretion of the Court to fashion a remedy appropriate to the circumstances. *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011). Further, the requirement of harm is a function of the theory of recovery, *Id.*, as is the character of any monetary relief. *See generally Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993). For these reasons, Sun Life's argument is not addressed by the Magistrate Judge as it is better left to the District Court if and when liability is found.

<u>CONCLUSION</u>

The Magistrate Judge finds that Plaintiff has conceded his claims under Count I of the complaint. As to Count II, the Magistrate Judge finds that Plaintiff's claims under ERISA § 502(a)(3) are not repackaged § 502(a)(1)(B) claims. Further, the Magistrate Judge finds that CHS, acting in its role as plan administrator, materially misrepresented the benefits to which Ms. Rainey was entitled through its web benefits portal and that Ms. Rainey reasonably relied upon those misrepresentations to her detriment. As to Sun Life, the Magistrate Judge finds that Sun Life's decision to postpone eligibility determinations until claim submission is reasonable in

light of its fiduciary duties and obligations.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that: 1) Plaintiff's claims under Count I of the complaint be **DISMISSED**; 2) CHS' motion for Judgment on the Administrative Record be **DENIED** as to Count II; 3) Sun Life's motion for Judgment on the Administrative Record be **GRANTED** as to Count II; 4) that Plaintiff's motion for Summary Judgment be **GRANTED** as to CHS but **DENIED** as to Sun Life; and 5) all other motions pending be **DISMISSED** as **MOOT.** Further, if the District Court adopts this recommendation, the Magistrate Judge recommends that CHS and Plaintiff be **ORDERD** to brief the issue of what relief would be "appropriate equitable relief" under ERISA § 502(a)(3).

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 15 day of August, 2014.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge